## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SALVADOR DIAZ<br>6127 Slipper Shell Dr. 151<br>Horntown, VA 23395<br>(347) 344-6571<br>          Plaintiff,<br><br>          v<br><br>THE HONORABLE HUNG CAO, in his official<br>capacity as the Secretary of the Navy,<br>1000 Navy Pentagon, RM 4D652<br>Washington, DC 20350-1000<br>          Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

RECEIVED
MAILROOM

JUL - 1 2026

Angela D. Caesar, Clerk
U.S. District & Bankruptcy Courts
for the District of Columbia

Case No.

Judge

Demand for Jury Trial

Case: 1:26-cv-02360 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 7/1/2026
Description: Pro Se Gen. Civ. (F-DECK)

## COMPLAINT

Salvador Diaz, the Plaintiff, files this complaint seeking review of the Board for Correction of

Naval Records ("BCNR") decisions of 03/10/2005 and 04/04/2005 and reinstatement by the United

States Department of the Navy for a proper and lawful separation. Plaintiff was unlawfully and

arbitrarily discharged from the Navy on 13 March 2007. Plaintiff's conviction is void by law because it

was obtained by fraud by the court and in a fundamentally unfair trial in violation of his rights to

conflict-free, effective assistance of counsel and in violation of the laws and Constitution of the United

States. In support of this complaint, Plaintiff alleges as follows:

### Preliminary Statement

1.    This case is about a veteran Navy Chief Petty Officer of 20 years who was unconstitutionally

tried, fraudulently convicted by military court-martial and unlawfully discharged from the service.

Plaintiff enlisted in the Navy in August, 1980 and entered active duty in October, 1980. In December

2000, after 20 years of meritorious service, Plaintiff was convicted of violations of Article 120 and 134,

1

UCMJ. Plaintiff was sentenced to nine years in prison, forfeiture of all pays and allowances, reduction in rank to E-1, and a dishonorable discharge. While incarcerated awaiting review and appeal of his case, Plaintiff was denied timely appellate review by a corrupt court, and, ultimately, denied a fair review in violation of Article 866, UCMJ and his rights to due process.  Plaintiff completed his prison sentence on 13 March, 2007. Due to lengthy appellate delay, his court-martial post-conviction processing was not yet complete. He was arbitrarily released without a separation physical examination, as required, and was dishonorably discharged from the service in violation of 10 U.S.C. 871(c)(1)(C) (iii). On 29 May 2007, the Supreme Court of the United States denied Plaintiff's motion for reconsideration on a petition for certiorari. This is the earliest date that Plaintiff could have been lawfully separated from the service.

2.    After failing to obtain equitable relief in various district courts between 2008-2023, Plaintiff filed an application for reinstatement with the BCNR, in February 2025, citing the unlawful discharge and conviction. On a letter dated 10 March 2025, the BCNR denied the application. Exhibit A. On 02 April 2025, the BCNR received Plaintiff's application for reconsideration citing factual errors by the Board and failure to adhere to statutes. On 04 April, only two days after receiving the application, the Board denied the petition citing lack of "new and material evidence" as the reason for the denial. Exhibit B. Plaintiff is now before this Court seeking review of the BCNR decision and reinstatement to service.

### Jurisdiction

3.    This Court has jurisdiction under 28 U.S.C. § 1331 and under 5 U.S.C. § 706(2)(A) and (2)(E), which provides for redress in the District Courts based upon agency decisions that are unsupported by law.

### Venue

4.    Venue is proper under 5 U.S.C. §706(2)(A) and (2)(E) and 28 U.S.C. §1391.

## Parties

5.    The Plaintiff is a Navy veteran who resides in Horntown, Virginia.

6.    The Defendant is the Secretary of the Navy being sued in his official capacity.

## BCNR Review

8.    The Plaintiff filed a petition with the Board for Correction of Naval Records in February 2025 seeking reinstatement to service based on the fact that his discharge from the Navy was a nullity because it was issued in violation of 10 U.S.C. 871(c)(1)(C) (iii) and, also, alleging that he was denied fair review and due process during his court-martial proceedings.

9.    The Board denied the petition in a letter dated 10 March 2025, (Exhibit A), because it found the submitted evidence insufficient. Id at 2. The Plaintiff filed a motion to reconsider citing factual errors in the Board's conclusions and failure to adhere to 10 U.S.C. 1552(a)(3)(B) in that:

> If a board makes a preliminary determination that a claim under this section lacks sufficient information or documents to support the claim, the board shall notify the claimant, in writing, indicating the specific information or documents necessary to make the claim complete and reviewable by the board.

The Board concluded that:

-evidence was not provided to substantiate due process contentions.

-mitigation evidence was not sufficient.

-personal appearance would not materially add to their understanding of the issues.

10.    All of these constitute violations of 10 U.S.C. 1552(a)(3)(B) above and the intent of the Wilkie Memo which the Board often cited. The Board violated 10 U.S.C. 871(c)(1)(C) (iii) by failing to notify the claimant, in any manner, of the need for further information. More importantly, the central premise for the petition was that the Navy discharge of 13 March 2007, (Exhibit C), was unlawful and in brazen violation of Article 71(c)(1)(C), UCMJ. The BCNR found the claim "baseless" because it had wrongly determined that the controlling language in the case was Article 71(c)(1)(B). (Exhibit A at 3). This

3

determination was based on the unsupported and incorrect interpretation by the Board that on 11 September 2006 CAAF had denied the petition for a grant of review. (Exhibit A at 2). In fact, CAAF granted review of one issue on the case on 27 October 2005, (Exhibit D at 1), making Article 71(c)(1)(C), not 71(c)(1)(B), the controlling language in the case and rendering the discharge unlawful. CAAF summarily decided the case on 11 September 2006 denying any relief. (Exhibit D at 2).

11.    The Board received an application for reconsideration on 02 April 2025 and, in a letter dated 04 April 2025, (Exhibit B at 1), the Board denied the petition claiming no new evidence was submitted. Both BCNR responses were arbitrary and unsupported by the evidence and the law.

12.    The evidence clearly shows that the Plaintiff was discharged from the service before the law allows and, therefore, the discharge has no validity. The Supreme Court denied Plaintiff's petition for a writ of certiorari on 16 April 2007 and a petition for rehearing on 29 May 2007. (Exhibit E). This was the earliest lawful date for a discharge in accordance with Article 71(c)(1)(C). The evidence also shows that the BCNR wrongly determined the processing of Plaintiff's appeal by CAAF. It also shows that it ignored and failed to correct its mistakes when given the opportunity to do so on reconsideration.

13.    This was clearly arbitrary, capricious, and contrary to the facts and the law.

**Trial**

14.    The Plaintiff was tried by a military court-martial 27 November-01 December 2000. Plaintiff's was convicted in a fundamentally unfair trial. Trial errors included among others:

**The Plaintiff Was Tried by a Court Without Constitutional Jurisdiction.**

15.    A trial by court-martial denies the defendant the constitutional protections of, among others, the unanimous verdict of 12 independent jurors; double jeopardy protection; conflict-free assistance of counsel; Article III appointed judges. These even apply to retired military members as well. A court-martial "in truth and reality it is not a law, but something indulged rather than allowed as a law; the necessity of government, order, and discipline in an army, is that only which can give those laws a

4

countenance: *quod enim necessitas cogit defendit."* Article 1. Section 8, Clause 16.

16.    In *Solorio v, United States,* 483 US 435 (1987), the Supreme Court made courts-martial a permanent emergency which is clearly contrary to Article 1, Section 8, Clause 16 and the Fifth Amendment. The decision is not supported but, in fact, contradicted by the Constitution, the history of everything ever written about courts-martial, and, just as importantly, it defies logic and common sense; why would anyone want to deny constitutional protections to servicemembers in the absence of any emergency? The Court failed to identify the emergency which necessitates subjecting service members to trials by unconstitutional courts-martial. The Court held that the jurisdiction of a court-martial depends solely on the accused's status as a member of the Armed Forces, and not on the "service-connection" of the offense charged. Even a retired military is said to be subject to court-martial jurisdiction. The Court was decidedly wrong. The Court never addressed the most important factor in deciding jurisdiction for all offenses: location. The Court also failed to address the case where this is discussed in details: *United States v. Bevans,* 16 US 336 (1919). See Note 45 "The crime of murder, when committed by any officer, seaman, or marine, belonging to any public ship or vessel of the United States, without the territorial jurisdiction of the same, may be punished with death by the sentence of a court martial. Act. of 1803 for the better government of the navy, ch. 187(33,) sect. 1, art. 21. But the case at bar was not cognizable by a navy court martial, being committed within the territorial jurisdiction of the United States." Also See Fifth Amendment: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger;"

**Improper Withdrawal of Charges.**

17.    Plaintiff's charges were initially referred to a special court-martial but were later withdrawn and re-referred to a general court-martial without an explanation as required by the rule. Under R.C.M. 604,

charges may be withdrawn and referred to another court-martial. However, if the later referral is more onerous to the accused, as it was in this case, the reasons for the withdrawal and later referral should be included in the record. There is nothing on the record explaining the reasons for the withdrawal and more onerous referral. This was a jurisdictional error.

### Improper Referral of Charges.

18.   The case was improperly referred to trial without a proper Article 32 investigation in violation of R.C.M. 405. Rule 405(b) states that if an earlier investigation is conducted before the accused is charged with an offense, no further investigation is required unless demanded by the accused. The accused made such request pursuant to the rule because he had been denied access to every witness he had requested during the investigation. The request was denied. This was Due Process violation and, also jurisdictional error.

### Automatic Reversal.

19.   The judge failed to resolve a defense counsel conflict of interest issue argued before trial. Prior to trial, defense counsel asked to be removed from the case because of conflict-of-interest. Counsel felt he could not properly cross-examine a potential witness because of his prior representation of that witness. The judge held a hearing on the issue and promised a ruling at a later date. He never delivered on that promise. This was automatic reversible error. In *Holloway v. Arkansas,* 435 US 475(1978), the Supreme court held that failure by a judge to resolve a conflict-of-interest issue raised before trial was cause for automatic reversal.

### Ineffective Assistance of Counsel.

20.   The defense counsel failed to investigate the case and was, by his own admission, totally unprepared to cross-examine witnesses. His failure to investigate, in spite of the judge's exhortations to do so, resulted in the denial of all the material witnesses because he could not give the court the expected testimony from these witnesses. He was equally unprepared to cross-examine witnesses for

6

the prosecution. Defense counsel was so inept that the trial counsels openly laughed in court at his ineptness in cross-examination. This was a violation of the 6th Amendment's right to effective counsel.

## POST TRIAL REVIEW

### Fraud

21.  Plaintiff's case was subject to mandatory review by the Navy-Marine Corps Court of Criminal Appeals, ("NMCCA"), under 10 U.S.C. 866 ("Article 66"). The statute requires review be conducted by a panel of no less than three appellate military judges which may only affirm that which it finds correct in law and fact on the basis of the entire record.

22.  Unfortunately, the judges of the NMCCA were not concerned with the provisions of the statute. The judges, under the leadership of Chief Judge C. W. Dorman had their own priorities.

23.  Dorman's NMCCA perpetrated a fraud against the court and American public. The court was primarily concerned with statistics to enhanced the performance reports of the judges who were all in their farewell tours and sought advancement to a higher pay grade in which to retire. To that effect, the court judges carried out a conspiracy to maximize the number of cases processed which denied appellants timely and fair reviews of their cases in violation of their rights under Article 66. Under this conspiracy, the court reviews were conducted by a *de facto* one judge panel where, while three judges were officially named to the panel, only one judge, ostensibly, 'reviewed' the case while the other two judges simply rubber-stamped the lead judge's opinion; leaving the other two judges free to review other cases in similar manner. This had the effect of tripling the court's productivity. It should be noted here that as a result of this scheme, there were never dissenting opinions in NMCCA's decisions in spite of it having the largest number of remands from the Court of Appeals for the Armed Forces, ("CAAF") when compared to the other service courts. This resulted in thousands of service members being denied lawful review of their cases under Article 66, as well as, their right to Due Process under the Fifth Amendment.

7

24. *United States v. Jenkins*, 60 MJ 27 (CAAF 2004) and many other cases clearly demonstrate that the entire judicial staff of the NMCCA was complicit in this fraudulent activity. In it, the CAAF entertained the issue of:

> WHETHER THE LOWER COURT'S VERBATIM REPLICATION OF SUBSTANTIAL PORTIONS OF THE GOVERNMENT'S ANSWER BRIEF AS THAT COURT'S OPINION CONSTITUTES AN ABUSE OF DISCRETION, NEGATES ANY APPEARANCE OF JUDICIAL IMPARTIALITY AND SUBSTANTIALLY UNDERMINES THE INTEGRITY OF THE OPINION.

25. This came about as a result of judge R. C, Harris who decided to improve the already corrupt practice by merely editing the Government's answer brief and turning the result as his opinion. This took place in no less than 15 other cases with every other appellate judge participating, including the Chief Judge. This situation could only happen because none of the judges assigned to these panels were actively participating in these reviews and were merely rubber stamping their signatures on these opinions with the ubiquitous "after careful consideration of the record, we have determined that …" Had these judges conducted these reviews as per Article 66, they most certainly would have noticed the inescapable similarities between the Government's answer brief and their opinions as the CAAF did.

26. The court established a priority of processing thin file cases ahead of thick file cases, as was the case in this Plaintiff's, resulting in abnormally excessive delay. See *Diaz v. Judge Advocate General of the Navy*, 59 MJ 34 (CAAF 2003).

27. The court's rules were unconstitutionally amended to allow defense counsels to mass request extensions of time to file appeals. These requests should be evaluated on a case-by-case basis to determine the merits of each request individually. The court was only concerned in the time saved by filing and reviewing only one request as opposed to the 50-60 that each attorney had to submit each month.

28. The NMCCA, under Chief Judge Dorman, indiscriminately denied due process and the provisions

of Article 66 to those before it. And, singled out those whose challenged the court's methods for specific retributions, as it did in the Plaintiff's case.

29. Chief Judge Dorman ultimately retired at a higher paygrade achieved by denying Due Process to thousands of Navy and Marine Corps service members. He has been drawing the higher, undeserved retirement pay for over 20 years.

30. These violations are sufficiently egregious to void the Plaintiff's court-martial conviction. As mandated by the Supreme Court in *Dynes v. Hoover,* 61 US 65 (1857) that persons "belonging to the army and the navy are not subject to illegal or irresponsible courts martial, when the law for convening them and directing their proceedings of organization and for trial have been disregarded. In such cases, everything which may be done is void-not voidable, but void; and civil courts have never failed, upon a proper suit, to give a party redress, who has been injured by a void process or void judgment." *Id* at 81.

### Plaintiff's Post-Trial Delay

31. After Plaintiff's objections to his post-trial delays were ignored by the NMCCA, he filed a motion with the CAAF, which interpreted the motion as a petition for a writ of habeas corpus by the court. CAAF ruled in favor of the Plaintiff finding that the lower court had failed to exercise vigilance over the appeal process and ordered the NMCCA to expedite his appeal and present a plan for correcting the shortcomings. See *Diaz v. Judge Advocate General of the Navy*, 59 MJ 34 (CAAF 2003).

32. The NMCCA pretended to comply, but instead took action to retaliate against the Plaintiff.

### NMCCA Opinions

33. The NMCCA opinion in *United States v. Diaz*, 61 MJ 594 (N.M.Ct.Ct.Crim.App. 2005), (Exhibit F), was fraud. Almost entirely, the opinion consists of a series of gaslighting, misapplication of, or deliberate use of inapplicable cases, and just plain lies with the objective of fixing guilt where none could be lawfully proven.

34. Chief Dorman assigned himself to the case and, in a preliminary opinion dated 10 June 2004,

9

ordered a hearing to find "additional facts" necessary to resolve a conflict-of-interest issue raised and argued before trial. This was totally contrary to the controlling standard of review established by the Supreme Court in *Holloway v. Arkansas,* 435 U.S. 475 (1978) holding that when a judge failed to resolve a conflict of issue raised before trial, reversal was automatic.

35.   Reviews under Article 66 differ from appellate review in that a military court is required to review the entire record to ensure the laws were properly observed regardless of the issues raised by the appellant. In other words, the court's role under Article 66 is to ensure a trial under lawful proceedings and fair sentencing. Chief Dorman's actions in this case were that of a prosecutor. In the aftermath of the hearing, the court issued its final opinion on 23 March 2005.

36.   In what may be the one of the most specious legal opinion in the history of military opinions, Judge Dorman first sought to discredit the appellant with salacious false narrative, (Exhibit F at 6,7); dismissed issues of law under the waiver umbrella; failed to apply the controlling case on every key issue discussed; or simply ignored other issues, *id, passim*. This opinion can only be fully evaluated by adding all of its parts. Then, it can be fully seen how the argument and logic use to dismiss a particular issue is fully defeated by the law and facts in a different issue.

### Causes of Action

37.   The Plaintiff realleges and incorporates all of the allegations above as if fully set forth herein.

38.   The BCNR decision was arbitrary, capricious, and contrary to the facts and the law.

39.   The Navy acted arbitrarily, maliciously, and contrary to law when it dishonorably discharged Plaintiff on 13 March 2007 in violation of 10 U.S.C. § 871 and committed fraud on the United States with its vindictive and biased review of his trial under 10 U.S.C. § 866.

### PRAYER FOR RELIEF

40.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the

Defendant and award the following relief:

Order reinstatement of Plaintiff to the Navy to correct errors and injustices in Plaintiff's military records and effect a lawful discharge from service.

Issue order declaring Plaintiff's conviction by court-martial void in accordance with *Dynes v. Hoover,* 61 US 65 (1857).

Order evidentiary hearing aimed to investigation on the fraud by the NMCCA between 2002 and 2007.

Grant such other relief as the Court deems just and proper.

Dated:  June 29, 2026

Respectfully submitted,

Salvador Diaz
P. O. Box 151
Horntown, VA 23395-0151
(347) 344-6571
sal13diaz@hotmail.com

11